# RITTER v. KRAKAU.

PATENTS; INTERFERENCE; APPEALABLE ORDERS.

1. In an interference case, this court cannot review the rulings of the Patent Office upon interlocutory matters that occurred in the Patent Office during the pendency of the case, such as motions for rehearing, motions to vacate orders and remand the cause, which have no reference to the merits of the controversy, unless, perhaps, in extreme cases it should be necessary for the maintenance of the jurisdiction of this court.

2. Where, in an interference case, it appears that neither party actually reduced to practice, but all that each did was to conceive the invention and to file an application, it was *held* that while weeks and months, and perhaps even years, might not count for much in the race of diligence between rival inventors when the time is to be applied to the actual reduction to practice of complicated inventions, the operativeness of which is required to be proved by laborious experiment, yet an unexplained delay of two months and a half in filing his application by the party first conceiving, warranted the granting of the patent to his more diligent opponent.

No. 261. Patent Appeals. Submitted November 11, 1904. Decided December 6, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are sufficiently stated in the opinion.

The appellant appeared in proper person and with him was *Mr. W. H. Singleton.*

*Mr. T. N. Bakewell* and *Mr. C. P. Byrnes* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference case. The invention in controversy has reference to the construction of frictional draft gear for railway

cars, and is claimed to be an improvement upon a mechanism described in a patent issued to one Gallagher on July 2, 1901. It is stated in these two counts:

"1. In a mechanism of the character indicated, a frictional member, a spring seat having frictional engagement with one side of said friction member, a follower having frictional engagement with the opposite side thereof, and means whereby, when the mechanism is subjected to strain, said spring seat and follower act upon each other to cause them to frictionally engage said friction member, substantially as described.

"2. In a mechanism of the character indicated, a friction member, a spring seat having frictional engagement with one side of said friction member, and a follower having frictional engagement with the opposite side thereof and having wedging engagement with said spring seat to cause said seat and follower to frictionally engage said friction member when the mechanism is subjected to strain, substantially as described."

It seems that there was question in the Patent Office as to the patentability of these issues in view of the condition of the prior art,—that is, in view of patents that had previously been granted; but it was ultimately determined that they were patentable, if to the word "follower," by which the principal element in the alleged invention was designated, there is given a restricted meaning as being a part which has a linear, but no transverse, movement, such as seems to be used in the Gallagher patent.

The appellees, Harry T. Krakau and Lendell A. Connor were the first to file their application in the Patent Office, which they did on May 3, 1902. A little upwards of five months afterwards, on October 11, 1902, Gilbert P. Ritter filed his application. Upon being placed in interference with each other, Krakau and Connor filed their preliminary statement, in which they claimed conception of the invention and disclosure of it with drawings on April 17, 1902, and again on May 3, 1902, and subsequently thereto; but acknowledged that they had made no model and had not reduced the invention to practice. Ritter in his preliminary statement alleged that he had conceived the invention in the early part of March, 1902, and at the same time

had made a *"verbal disclosure"* of it, "referring for that purpose to the drawings of certain other patents; that on or about the middle of May, 1902, he again disclosed the invention to others referring to the drawings of certain prior patents and penciling the required changes on the drawings of said patent; that on or about June 24, 1902, he made a drawing thereof and at that time exhibited said drawing and described the said invention to others;" and that he had done nothing to reduce it to practice.

Upon the testimony adduced all three of the tribunals of the Patent Office found in favor of the senior applicants, Krakau and Connor; and from the decision of the Commissioner the junior applicant, Ritter, has brought the case here by appeal.

Upon this appeal it is sought to induce us to review certain rulings of the Patent Office upon interlocutory matters that occurred in the office during the pendency of the cause, such as motions for rehearing, motions to vacate orders and to remand the cause, which have no reference to the merits of the controversy. But it is well settled that this court cannot and should not interfere with such rulings, unless, perhaps, in extreme cases it should be necessary for the maintenance of the jurisdiction of this court. Our jurisdiction is to review the final decisions of the Commissioner of Patents in the matter of interference, and in refusal to grant a patent.

The appellant comes here with the double burden of being the junior applicant and having the three concurrent decisions of the tribunals of the Patent Office against him. Neither party is hampered by any attempted actual reduction to practice; for there was none on either side. The appellees were the first to resort to the office; and their constructive reduction to practice by the filing of their application gives them an unquestionable priority in this regard. The only question in the case is that of priority of conception; and the determination of this question seems not to be attended with great difficulty.

The tribunals of the Patent Office do not discuss the case of Krakau and Connor at any length. They all reach the conclusion, either that Ritter had no conception of the invention—or at all events made no disclosure of it, which amounts to the same

thing in the patent law—before May 3, 1902, the filing date of the application of Krakau and Connor, or else that, if he had such conception of it, he was not diligent in reducing it to practice at the time when Krakau and Connor came into the field by filing their application.    This last is the finding of the Board of Examiners-in-Chief; the former is the conclusion of the Examiner of Interferences and of the Commissioner.    But there would seem to be ample testimony to sustain the allegation of Krakau and Connor in their preliminary statement thac they had disclosed the invention on April 17, 1902, to which date they are confined by their preliminary statement, although their testimony appears even to be sufficient to carry back the date of conception to January of 1902, possibly even to December of 1901. This testimony it is wholly unnecessary to discuss here.

The appellant's testimony that he made *"verbal disclosure"* of the invention in the early part of March, 1902, thereby excluding disclosure by sketches or drawings, or pencil marks such as he states he made in the middle of May, 1902, is far from being satisfactory.    But assuming it to be sufficient to prove conception and disclosure by him at the earlier date, we do not find that there was any diligence whatever exercised by him thereafter to perfect his invention or reduce it to practice.    He did nothing whatever between the early part of March, at which time he says he made this verbal disclosure, and May 3, when his competitors came into the Patent Office with their patentable invention.    He did nothing for months thereafter except to make some drawings in June; and it was not until October of 1902 that he filed the application which he might have filed in March or April of that year, if he had then the complete conception of the invention which he claims to have had.    Weeks and months, perhaps even years, may not count for much in the race of diligence between rival inventors, when the time is to be applied to the reduction to practice of a costly or intricate invention whose operativeness it is required to prove by laborious experiment. But where, as in this case, all that either party has done is to conceive the invention and to apply to the Patent Office for letters patent, such delay as was indulged in by the appellant was suffi-

cient to warrant the granting of the patent to his more diligent opponent.

We are of opinion that the appellees Krakau and Connor are entitled to judgment of priority of invention; and the decision of the Commissioner of Patents is therefore affirmed.

The clerk will certify this opinion and the proceedings of the court in the premises to the Commissioner of Patents, according to law.                                                    *Affirmed.*